UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JESSIE CHAMBLISS | * | CIVIL ACTION |
| VERSUS | * | NO. 22-2488 DIV. 2 |
| ENTERGY CORPORATION | * | CONMAG. |

## ORDER AND REASONS

Before me is Defendant Entergy ("Entergy") Motion for Summary Judgment (ECF No. 28) seeking summary judgment on Plaintiff Jessie Chambliss' claims of race discrimination, harassment and retaliation under Title VII and 42 U.S.C. § 1981. Plaintiff timely filed an Opposition Memorandum (ECF No. 41) and Entergy filed Reply Memorandum (ECF No. 44). No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the argument of counsel, and the applicable law, Entergy's motion for summary judgment is GRANTED for the reasons stated herein.

## I.    FACTUAL BACKGROUND

On February 14, 2020, Entergy offered plaintiff employment as a Senior Material Operator at its Waterford III nuclear plant, contingent upon his obtaining and maintaining unescorted access authorization ("UAA") to the nuclear plant. ECF No. 28-11 & No. 41-1 (together, "Uncontested Facts") ¶¶ 1, 3. The offer letter expressly stated that employment was conditioned upon "[o]btaining and maintaining authorization for unescorted access to the nuclear plant site . . . ." ECF No. 28-2 at 43. To comply with the with Nuclear Regulatory Commission's guidance and other federal regulations, Entergy's Waterford III nuclear plant's UAA program is designed to provide high assurance that individuals subject to Entergy's Access Authorization and Fitness for Duty programs are trustworthy and reliable and that they do not constitute an unreasonable threat

1

to public health and safety or security, including the potential to commit radiological sabotage. ECF No. 28-1 at 3 n.2.

The Warehouse Supervisor serves as the immediate supervisor for the Senior Material Operator, but, because that Warehouse Supervisor quit around the same time Plaintiff became employed, two other managers alternated in that role.  Uncontested Facts ¶¶ 4-7.  Tracy Askew (African American) and Kristopher Patin (presumably Caucasian) were two managers who served in that role when Chambliss was hired.  ECF No. 28-4 ¶¶ 3-5; No. 28-3 ¶ 4.  Entergy contends that, within a few weeks of Plaintiff's employment, Plaintiff reported that he was not receiving adequate training and his co-workers began to complain about his performance.  Uncontested Facts ¶¶ 8-11.[1]

In late 2020, Melissa Hardin began working as Warehouse Supervisor and was tasked with managing a planned outage at Waterford III in late 2020.  Uncontested Facts ¶¶ 13-15.  Hardin met with Chambliss in September 2020 to go over expectations, after which Chambliss told Hardin he suffered a panic attack due to stress of having to pass tests he felt unprepared to take (particularly the forklift test) and he felt he was being singled out and discriminated against by Askew pressuring him to take and pass the tests.  *Id.* ¶¶ 16-20; *see also* ECF No. 28-3 at 7; *but see* 28-2 at 28-29 (denying any assertion that Tracey Askew or Terrence James discriminated against him based on his race).  Chambliss admitted he was not the only employee tested, and he ultimately passed both his forklift and hazmat tests.  ECF No. 28-2 at 25-26; Uncontested Facts ¶ 21.

---

[1] Although Plaintiff raises evidentiary objections to Entergy's assertion that Plaintiff's co-workers began complaining about his performance (*compare* ECF No. 28-11 ¶¶ 9-11 *with* ECF No. 41-1 ¶¶ 9-11), Plaintiff's Opposition attaches no contradictory evidence (no affidavit, deposition testimony or discovery response) to create a genuine dispute regarding that factual assertion.  In contrast, Entergy attaches email communications and declarations from two employees stating that Plaintiff's co-workers complained that he was not doing his share of the work, not doing quality work, not working as a team.  Askew Declaration, ECF No. 28-4 ¶ 10; Patin Declaration, ECF No. 28-3 ¶¶ 5-6, at 1-2, 5.

On December 30, 2020, Entergy hired Terrence James (African American) as the Warehouse Supervisor, and James became Plaintiff's immediate supervisor. *Id.* ¶¶ 23-24; *see also* ECF No. 28-5 ¶¶ 2-4. On January 5, 2021, James reported that Chambliss told him and another manager that he had taken prescription medication and was high, so James sent Plaintiff home for the day and requested that Site Access review Plaintiff's UAA credentials for continued unrestricted access to the nuclear power plant. ECF No. 28-11 ¶¶ 25-27. Although Chambliss' Response to Entergy's Statement of Uncontested Facts disputes that he told James that he was high from prescription medication,[2] Plaintiff again fails to attach or cite any evidence to create a genuine dispute of that asserted fact. Further, Chambliss does not deny that James sent him home or requested review of his UAA credentials. Uncontested Facts ¶¶ 26-27.

A few weeks later, on February 8, 2021, Entergy asserts that one of Chambliss' co-workers reported that Chambliss' speech was slurred and he seemed sluggish, after which James sought to discuss Entergy's fitness for duty requirements with Plaintiff and accompanied him to Site Access to undergo a fitness for duty assessment. ECF No. 28-11 ¶¶ 28-33. Again, Chambliss' Response to Entergy's Uncontested Facts Statement disputes that assertion as hearsay with no contrary evidence offered, but admits that James asked Chambliss to discuss Entergy's fitness for duty requirements. ECF No. 41-1 ¶¶ 28, 29. Likewise, Chambliss disputes Entergy's description of his behavior (e.g., making loud statements about his coworkers while walking to Site Access),[3] but offers no evidence to contradict the statements of James (ECF No. 28-5 ¶¶ 8-13, at 2), Robin (*id*. at 7), Askew (*id*. at 8), Gongora (*id*. at 9-10), Patin (*id*. at 11-12), or Rabalais (*id*. at 13).

The parties agree that, on that same day (February 8, 2021), (a) Chambliss made an ethics line complaint to report that Askew and James discriminated against him based on his race and

---

[2] *Compare* ECF No. 28-11 ¶¶26-27 *with* ECF No. 41-1 ¶¶ 26-27.
[3] *Compare* ECF No. 28-11 ¶¶ 30-34 *with* ECF No. 41-1 ¶¶ 30-34.

that another employee (Patin) was a racist, and (b) another employee Gongora (one of Chambliss'

co-workers) made an ethics line complaint against Chambliss.  Uncontested Facts ¶¶ 35-37, ¶¶ 38-

40; *see also* ECF No. 28-6 at 3-6; ECF No. 28-10.   After Entergy's Human Resources advisor

Gillian Taylor investigated the complaints, she found no evidence that Askew, James or any other

employee discriminated against Chambliss.  Uncontested Facts ¶ 41; Declaration of Gillian Taylor,

ECF No. 28-6 ¶¶ 3-4.   Taylor's final report indicates that, during the investigation, Chambliss

asked to rescind his request for an investigation.  ECF No. 28-6 at 9.  On February 23, 2021,

Entergy issued a Last Chance Written Warning to Chambliss.  Uncontested Facts ¶ 44.

About two weeks later, on March 3, 2021, Chambliss reported to work but advised James

that he was unable to work due because of pain, later attributed to his back.  The next day, he did

not report to work and initially requested FMLA leave but later opted to take a week of vacation.

Chambliss visited his doctor and received prescriptions for various medications.   Uncontested

Facts ¶¶ 45-49.  On March 18, 2021, Chambliss was allegedly found asleep at his desk after he

missed the morning meeting.  Although Chambliss denies missing the morning meeting and being

found asleep at his desk, he admits that James instructed him to report to Site Access for a fitness

for duty assessment on that date and, because James was not available to take him, Patin

accompanied Chambliss to Site Access for a drug test and fatigue assessment.  *Id*. ¶¶ 50-54.  On

the way, Chambliss asked Patin if he had been transferred to Waterford III after he called an

employee the n---- word, which he alleges Patin admitted.  *Id*. ¶ 55; *see also* ECF No. 28-2 at 33-

34.  Chambliss states that Patin once called him "boy."  Uncontested Facts ¶ 56.

Chambliss' March 28, 2021, drug test was negative but, based on behavioral observations,

Entergy's Medical Review Officer restricted Chambliss from operating any equipment pending a

sleep study, which resulted in Entergy rescinding Chambliss' UAA pending his ability to

demonstrate fitness for duty.  *Id.* ¶¶ 57-59.  The sleep study revealed Chambliss suffers from

4

moderate obstructive sleep apnea, and his doctor reported to Entergy that he was unable to perform his job functions as a result of sleep apnea.  *Id.* ¶¶ 60-61.  A few months later, on October 8, 2021, Chambliss informed Entergy that his doctor released him to return to work, but Entergy's Medical Review Officer did not clear Chambliss' return to work because his doctor's note did not demonstrate compliance with Entergy's standards.  Entergy asserts that, based on Department of Transportation regulations, its standards required that, to regain his UAA, Chambliss was required to show that, for 70% of the month, he was using the CPAP machine for at least four hours per day, and his doctor's documentation did not reflect sufficient use of the CPAP.  *Id.* ¶¶ 62-64.

Entergy's Human Resources representative met with Chambliss on October 29, 2021 to explain that he was responsible for establishing his fitness for duty and complying with the requirements for UAA site access, told him that he had 30 days from that date to demonstrate compliance, and sent him two emails during November to remind him that he needed to demonstrate compliance.  *Id.* ¶¶ 66-69.  Chambliss did not provide the necessary information to show that he was in compliance with Entergy's standards requiring that he demonstrate use of the CPAP for at least four hours a day for 70% of the month as necessary to regain his UAA (*id.* ¶ 69), which Chambliss admitted in his deposition.  ECF No. 28-2 at 37 (stating he wore the CPAP for four hours for one straight week); at 41 (stating that he did not wear the CPAP after being released to return to work).

In January 2022, Entergy notified Chambliss that he was being terminated because he was not qualified for his position due to his inability to regain his UAA.  *Id.* ¶¶ 70, 71.

## II.   <u>THE PENDING SUMMARY JUDGMENT MOTION</u>

Entergy seeks summary judgment dismissing (1) Plaintiff's Title VII claims as time-barred because he filed suit more than 90 days after the EEOC's May 3, 2022 determination letter; (2) the § 1981 claim on the basis that he has not established severe or pervasive harassment based on race;

(3) both the Title VII and § 1981 claims because Chambliss cannot establish a prima facie case because he (a) was not qualified for the position, (b) was not replaced by someone outside of the protected, or (c) was not treated differently than similarly situated employees who are not African American, and (d) Entergy's has articulated a legitimate, non-discriminatory reason for the termination and Chambliss has not established pretext; and (4) the Title VII and § 1981 retaliation claims fail because Chambliss cannot establish a causal connection between any protected activity and Entergy's termination decision nor can he establish pretext.  ECF No. 28 ¶ IX at 3-4.

Plaintiff opposes the motion, arguing that his Title VII suit is timely when an additional 3 days are added for mailing.  ECF No. 41 at 4-6.  Plaintiff argues that he is a member of the protected class and experienced an adverse employment action[4] (*id.* at 6), which Entergy concedes.  Plaintiff contends that summary judgment is improper given the fact-sensitive nature of his preferential treatment claim (i.e., showing "similarly situated employees" were treated differently in "nearly identical" circumstances) because Chambliss disputes "so many material facts."  *Id*. at 7.  With regard to retaliation, Plaintiff argues his written reprimand is an adverse employment action and he can establish a causal link based on Entergy's knowledge of his protected activity.  *Id*. at 8-10.

Entergy argues in reply that even Plaintiff admits (1) that he lost his UAA status and could not regain it and (2) maintaining UAA status is a job qualification.  ECF No. 44 at 1-2.  These admissions, Entergy argues, are fatal to Plaintiff's discrimination and retaliatory termination claims because he cannot establish that he was qualified for the position (and thus cannot establish a prima facie case) and admits that he did not comply with Entergy's requirements to regain UAA (and thus cannot establish that Entergy's legitimate business reason for termination is pretextual).

---

[4] Plaintiff erroneously cites the "adverse employment action" standard recently rejected by the Fifth Circuit's en banc decision in *Hamilton v. Dallas Cnty*., 79 F.4th 494 (5th Cir. 2023) (holding that a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the "terms, conditions, or privileges of employment," not with respect to an "ultimate employment decision.").  This case, however, involves an adverse action even under the former standard.

*Id.* at 2.  With regard to the hostile environment claim, Entergy argues that Plaintiff's assertion that Patin required him to take and pass tests and once called him "boy" are insufficient to rise to the level of severe or pervasive harassment.  *Id.* at 2-3.  Entergy also argues that Plaintiff's denial of its uncontested facts is insufficient to defeat its properly supported summary judgment motion, and his evidentiary objections of hearsay are misplaced because the facts are not being admitted for the truth of the matter asserted but rather for context to establish that Entergy had reason to believe he was performing poorly and behaving inappropriately.  *Id.* at 3-4.  Finally, Entergy argues that Plaintiff cannot save his untimely Title VII claim by relying on the 3-day mailing rule because, as recent cases recognize, when the EEOC e-mails its determination letter, notice is deemed received on the day it was sent.  *Id.* at 4-5.

## III.  APPLICABLE LAW AND ANALYSIS

### A.  Summary Judgment Standard

Rule 56 mandates that summary judgment be issued "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.  If, however, the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[6]  Summary judgment is thus proper if the party opposing the motion fails to establish an essential element of her case.[7]

---

[5] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).
[6] *Celotex*, 477 U.S. at 322–25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).
[7] *See Celotex*, 477 U.S. at 322–23.

Summary judgment is not precluded by disputes over facts that are not "material"[8] and disputes that are not "genuine."[9]  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[10]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[11]  Likewise, when a party's version of events is "blatantly contradicted by the record," it is not entitled to the benefit of any favorable light.[12]  Thus, the court must resolve factual controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[13]

Only evidence—not argument, not facts in the complaint—will satisfy that burden.[14] Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[15] Summary judgment affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated therein.[16]  Summary judgment affidavits need not, however, use any magic language, provided the affiant's personal knowledge and competence are reasonably inferred from their positions and the

---

[8] A fact is material if its resolution could affect the outcome of the action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (citation omitted).

[9] A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson.*, 477 U.S. at 248; *see also Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (citation omitted).

[10] *Delta & Pine Land Co. v. Nationwide Agribus. Ins.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[11] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.

[12] *Scott v. Harris*, 550 U.S. 372, 376, 380 (2007) (stating plaintiff's selective description of car chase as "controlled" was contradicted by dashcam footage of the high-speed chase).

[13] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

[14] *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991).

[15] *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

[16] Fed. R. Civ. P. 56(c)(4).

nature of their participation in the matters to which they swore.[17]  Statements made by affiants

without personal knowledge are not capable of being presented in admissible form at trial.[18]

Generalized testimony of a party's subjective belief is insufficient to create an issue for

trial when the beliefs are not substantiated.[19]  Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[20]  If the

evidence is merely colorable or not significantly probative, summary judgment is appropriate.[21]

In response to many of Defendant's asserted undisputed material facts, Plaintiff responds

with evidentiary objections (hearsay, lack of authentication) or indicates he "contest[s] as written"

the assertion.[22]  Plaintiff did not submit any discovery responses, affidavits, deposition testimony

or other evidence.  In response to a properly supported summary judgment motion, the non-movant

"must identify specific evidence in the record and articulate the manner in which that evidence

supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of

the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[23]

In the absence of proof, the Court will not assume the nonmovant could or would prove the

---

[17] *Matter of Green*, 968 F.3d 516, 523–24 (5th Cir. 2020) (noting personal knowledge may be inferred based on affiant's "sphere of responsibility"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005) (inferring personal knowledge based on finding that testimony fell within affiant's "sphere of responsibility") (citations omitted).
[18] *D'Onofrio v. Vacation Publ'ns, Inc*., 888 F.3d 197, 208 (5th Cir. 2018) (citations omitted); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 366 (5th Cir. 2015) (holding affidavit based on witness' belief rather than personal knowledge is insufficient summary judgment evidence) (citations omitted); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 & n.15 (5th Cir. 2014) (stating summary judgment affidavit must provide sufficient information to allow the court to conclude that the affiant's assertions are indeed based on personal knowledge, not simply assert that the conclusions are based on personal knowledge) (citing cases); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted) (stating conclusory assertions in affidavit may not be relied upon on summary judgment).
[19] *Bickerstaff v. Whitney Nat'l Bank*, No. 96-30231, 1996 WL 595654, at *3 (5th Cir. 1996) (citation omitted); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co*., 58 F.3d 144, 152–53 (5th Cir. 1995) (holding plaintiff's subjective beliefs are not sufficient to create an issue of fact).
[20] *See Bickerstaff*, 99 F.3d at *2–3 (holding that the evidence "falls within the gambit of subjective speculation and could not prevent summary judgment"); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for non-moving party.").
[21] *Anderson*, 477 U.S. at 249–50 (citations omitted).
[22] *See. e.g.*, ECF No. 41-1, ¶¶ 9-12, 26, 28.
[23] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts, and the mere argued existence of a fact dispute will not defeat a properly supported motion.[24]  Consistent with FED. R. CIV. P. 56(e)(2), Fifth Circuit precedent, and this Court's Local Rules, for purposes of this summary judgment motion, the Court deems admitted any fact to which the nonmovant has failed to respond by identifying the evidentiary basis for a genuine dispute of that material fact.

Further, Plaintiff's hearsay objections and lack of authentication objections are unfounded. The Court agrees that the sworn declarations summarizing reports from Plaintiff's co-workers are not offered for the truth of the employees' reports.  Rather, the statements are offered to establish that Entergy received those reports and acted based on its belief of the truth of those reports.[25] Further, the 2010 amendments to Rule 56 make clear that a nonmovant may oppose a summary judgment motion with admissible evidence *or evidence that would be admissible at trial*. Regardless of whether the assertions, in their current form, are authenticated or constitute hearsay, the Court properly considers same if the information is capable of being "presented in a form that would be admissible in evidence."[26]

### B.  Title VII Administrative Exhaustion

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating against any individual with respect to "terms, conditions, or privileges of employment, because of such individual's race."[27]  A plaintiff alleging discrimination claims must exhaust administrative remedies by filing a charge of discrimination filed with a state or local agency within 300 days

---

[24] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little*, 37 F.3d at 1075); *Simmons v. Berglin*, 401 F. App'x 903, 905, 908 (5th Cir. 2010) (citing *Anderson*, 477 U.S. at 248); *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005) (citations omitted).
[25] ECF No. 44 at 3-4; *see also Nobles v. Cardno, Inc.*, 549 F. App'x 265, 268 (5th Cir. 2013) (rejecting hearsay argument when evidence is used to establish the employer's state of mind based on co-workers' reports).
[26] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (refusing to strike documents that were not authenticated because Rule 56 requires only that the materials "be capable of being 'presented in a form that would be admissible in evidence.'") (quoting FED. R. CIV. P. 56(c)(2)); *see also Jones v. Tim Williams Wood Prods., LP*, No. 18- 00826, 2020 WL 3815265, at *5 (W.D. La. July 6, 2020) (citation omitted).
[27] 42 U.S.C. § 2000e-2(a)(1).

after the alleged unlawful employment practice occurred before filing suit in district court.[28]  The claimant must initiate a Title VII civil action within 90 days of receipt of the right-to-sue notice from the EEOC.  42 U.S.C. § 2000e-5(f)(1).  The court is obligated to strictly construe the statute of limitations.[29]

The 90-day period begins to run upon receipt of the first notice by either the plaintiff or counsel.[30]  This rule remains robust and vital today.[31]  Although the Fifth Circuit has not addressed the appropriate means by which a claimant or counsel receives notice of the right to sue, several courts have held that the claimant has "90 days to file suit from the date they receive sufficient notice, regardless of the medium in which that notice is conveyed."[32]  Courts within the Fifth Circuit have similarly held that, when a claimant receives notice that the right to sue has been issued through means other than mail, the 90-day period commences regardless of whether the letter has been received.[33]

---

[28] 42 U.S.C. § 2000e-5(e)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see also Jones v. City of Houston*, 756 F. App'x 341, 348 (5th Cir. 2018)(citing 42 U.S.C. § 2000e-5(f)(1)).

[29] *See Taylor*, 296 F.3d at 379–80.

[30] *See Ringgold v. Nat'l Maint. Corp.*, 796 F.2d 769, 770 (5th Cir. 1986) (citing cases) (holding that the 90-day limitation period begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel to the claimant).  The Fifth Circuit has explained that this "constructive notice rule" is premised on Congress's "basic policy choice" that in our system of representative litigation "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1094 (5th Cir. 1989) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)) (internal quotation and citation omitted), *aff'd sub nom. Irwin v. Dep't of Veterans Affs.,* 498 U.S. 89, 92–93 (1990) (adopting Fifth Circuit's reasoning).

[31] *Bernstein v. Maximus Fed. Servs., Inc.,* 63 F.4th 967, 969 (5th Cir. 2023) (citing *Carrizal v. Brennan*, 834 F. App'x 915, 917 (5th Cir. 2020) ("Fifth Circuit precedent is clear the [Title VII] period begins upon receipt by either counsel or claimant—whomever is first.").

[32] *Jackson-Pringle v. Wash. Metro. Area Transit Auth.*, No. 20-1880, 2022 WL 2982107, at *6 (D.D.C. July 28, 2022) (citation omitted), *aff'd,* No. 22-7119, 2023 WL 2605271 (D.C. Cir. Mar. 17, 2023); *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 116–17 (3d Cir. 2003) (finding oral notice of the right to sue was insufficient only because claimant was not informed of the 90-day statute of limitations); *Stewart v. Johnson*, 125 F. Supp. 3d 554, 560 (M.D.N.C. 2015) (holding that "[f]inal agency decisions transmitted via email can satisfy the notice requirement," even where a duplicate was later received in the mail) (citation omitted).

[33] *See, e.g., Boyd v. Monroe City Hall*, No. 20-1473, 2021 WL 1305385, at *4 (W.D. La. Mar. 8, 2021) (holding that "the EEOC notice of right to sue was transmitted to Plaintiff by email on August 17, 2020, and he had ninety days from then, until November 15, 2020, to file suit," even where the email was deposited in the plaintiff's spam folder), *R.&R. adopted*, No. 20-1473, 2021 WL 1299204 (W.D. La. Apr. 7, 2021); *Sloan v. Mem'l Hosp. at Gulfport*, No. 21-86, 2021 WL 2666858, at *3 (S.D. Miss. June 29, 2021), *appeal dismissed*, No. 21-60542, 2022 WL 2612530 (5th Cir. Mar. 31, 2022); *Young v. Martin Marietta Materials Inc.*, No. 22-272, 2022 WL 18109693, at *5 (E.D. Tex. Nov.

In this case, Plaintiff does not state when either he or his counsel received notice.  The EEOC Notice of Rights is dated May 3, 2022 and appears to have been sent by mail to Plaintiff and via email to Plaintiff's counsel.  ECF No. 28-2 at 49.  Consequently, Plaintiff is deemed to have received notice of the right to sue on May 3, 2022 when his counsel received the email from the EEOC advising that it was terminating the investigation and providing notice of Plaintiff's right to sue within 90 days.  Given the EEOC's email of the May 3, 2022 Notice of Rights to Plaintiff's counsel, his Title VII suit filed on August 3, 2022 (92 days later) is untimely.

### C. Discrimination Claims

The standards for liability for race discrimination claims under Title VII and § 1981 are the same.[34]  Both prohibit employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's race.[35]

The issue on a race discrimination claim is not whether the employer treated the plaintiff fairly or even whether its decision was correct or reached in error; the only issue is whether its decision was motivated by unlawful animus because illegal discrimination is different from simple unfair treatment:  "[I]t has long been the law in this circuit that Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."[36]  "Management does not have to make proper decisions, only non-discriminatory ones,"[37] and Title

---

8, 2022), *R.&R. adopted*, No. 22-272, 2023 WL 36069 (E.D. Tex. Jan. 4, 2023); *Taylor v. Cnty. Bancshares, Inc.*, 325 F. Supp. 2d 755, 764–65 (E.D. Tex. 2004) (collecting cases); *Straughn v. Tex. Powertrain Assembly, LLC*, No. 13-708, 2014 WL 5426489, at *6 (W.D. Tex. Oct. 22, 2014); *Hunter–Reed v. City of Hous.*, 244 F. Supp. 2d 733, 741 (S.D. Tex. 2003) (collecting cases); *Thornton v. S. Cent. Bell Tel. Co.,* 906 F. Supp. 1110, 1117 (S.D. Miss. 1995).

[34] *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n.3 (5th Cir. 2016) (citation omitted); *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021).

[35] 42 U.S.C. § 2000e-2(a)(1).

[36] *Nieto v. L&H Packing Co.*, 108 F.3d 621, (5th Cir. 1997) (citing *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Burdine v. Tex. Dept. of Cmty. Affs.,* 647 F.2d 513 (5th Cir. 1981)).

[37] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

VII is not a vehicle for judicial second-guessing of business decisions[38] because courts do not try the validity of an employer's good faith belief as to an employee's competence.[39]

Although Plaintiff initially appeared to suggest that three Entergy employees discriminated against him (Askew, James and Patin), Plaintiff testified that he does not contend that either Askew or James (both also African American) discriminated against him.[40]  Rather, he contends that Patin singled him out and discriminated against him when (1) he required Plaintiff take and pass certain tests and (2) once called him "boy."[41]

Proof and finding of discriminatory motive is required.[42]   A plaintiff may prove discriminatory motive through either direct or circumstantial evidence.[43]

### 1.  Direct Evidence

Direct evidence is a "statement or written document showing [the employer's] discriminatory motive on its face."[44]  The evidence must be direct and unambiguous, allowing one to conclude without any inferences or presumptions that an impermissible factor motivated the decision.[45]  Vague terms are insufficient to plausibly plead discriminatory intent.[46]  Even when a

---

[38] *Bell v. Bank of Am.*, 171 F. App'x 442, 445 (5th Cir. 2006) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see also Armendariz*, 58 F.3d at 151 n.7 (holding that establishing the employer's reason as misguided is insufficient; rather "the employee at all times has the burden of proving . . . that those reasons were a pretext for unlawful discrimination").

[39] *Deines v. Tex. Dept. of Prot. & Reg. Servs.*, 164 F.3d 277, 278, 281 (5th Cir.1999) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)) (holding that the issue is not whether an employer's decision was the correct one, or the fair one, or the best one, but rather, whether it was motivated by discrimination); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

[40] *Compare* ECF No. 28-9 at 7 *and* ECF No. 28-6 at 3, 7-8 *with* ECF No. 28-2 at 28-29.

[41] ECF No. 28-2 at 23-24; 42.  Plaintiff contends that Patin is "racist" because Patin allegedly told Plaintiff that Patin used a racial epithet toward another employee which resulted in him being transferred to Waterford III.  *Id*. at 33-34.

[42] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted).

[43] *Id*. (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

[44] *Portis*, 34 F.3d at 329; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.") (citation omitted).

[45] *Moss v. BMC Software, Inc.* 610 F.3d 917, 929 (5th Cir. 2010) (internal quotations omitted) (citing *EEOC*, 100 F.3d 1173 at 1181) (internal citation omitted).

[46] *See, e.g., Burrell v. Lab. Ready, Inc.*, No. 09-227, 2012 WL 1565360, at *5 n.13 (M.D. La. Mar. 30, 2012), (stating that the phrase "you peoples" is not indicative of racial animus and plaintiff's subjective belief otherwise is insufficient), *R.&R. adopted*, No. 09-227, 2012 WL 1565620 (M.D. La. Apr. 30, 2012); *Stone v. Par. of E. Baton Rouge*, No. 06-401, 2008 WL 4534374, at *7 (M.D. La. Sept. 30, 2008) (holding that that there is nothing directly or

plaintiff perceives the use of a vague term as discriminatory, that subjective belief, no matter how genuine, cannot provide the basis for relief.[47]

Plaintiff does not contend that anyone at Entergy, including Patin, used unambiguous racial epithets toward him or in connection with the termination decision.  Rather, his discrimination claims is premised on his perception that Patin's use of the term "boy" on one occasion is indicative of animosity toward Plaintiff based on race.

To determine whether comments in the workplace constitute direct evidence of discrimination, courts look to "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision."[48]  "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment."[49]  The court's "ultimate focus" in applying the direct-evidence test "is on whether the comments prove without inference or presumption that [the protected characteristic] was a basis in employment decisions' at [the plaintiff's workplace]."[50]

The term "boy" is a vague term and. while it may not always be benign, neither is it always offensive.  Considering the totality of the circumstances of the evidence submitted on summary

---

indirectly race-based about the words "you people"), *aff'd* 329 F. App'x 542 (5th Cir. 2009); *Maldonado v. FirstService Residential, Inc.*, No. 20--1484, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (citation omitted) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *Badaiki v. Schlumberger Holdings Corp.*, No. 20-2216, 2021 WL 6010580, at *6 (S.D. Tex. Aug. 23, 2021) (citations omitted), *R.&R. adopted*, 2021 WL 5542144 (S.D. Tex. Nov. 26, 2021),*R.&R. adopted*, 2021 WL 5769276 (S.D. Tex. Dec. 6, 2021); *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 549 (S.D. Tex. 2016) (citation omitted); *see also Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (finding vague comments insufficient to establish discrimination).

[47] *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991)).

[48] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (citation omitted); *accord Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (same).

[49] *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (citations omitted).

[50] *Herster v. Bd. of Sup. of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018) (quotation and citation omitted).

judgment, the single use of the term "boy" separate from the termination decision at issue by a supervisor who is not alleged to have been the decisionmaker on termination nor the medical officer who refused to clear Plaintiff or clear him fit for duty as necessary to regain his UAA access falls short of that necessary to establish direct evidence of discrimination.

### 2. __Indirect Evidence__

When a plaintiff relies on circumstantial evidence, the court analyzes the claim under the *McDonnell Douglas* framework,[51] which allows a plaintiff to create a presumption of discrimination by establishing a prima facie case of discrimination:[52] plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group, was treated less favorably than other similarly situated employees outside the protected group, or was otherwise discharged because of her protected trait.[53]

Initially, Plaintiff readily establishes the first and third elements of the prima facie case: he is a member of a protected group and he was discharged by his employer.  He has not presented evidence, however, to establish the second and fourth elements –  that he was qualified for the position or that he was replaced by someone outside his protected group, was treated less favorably than similarly situated employees outside the protected group, or was otherwise discharged because of his protected trait

---

[51] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03(1973); *see also Cicalese*, 924 F.3d at 766 (citing *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003)).

[52] *Cicalese*, 924 F.3d at 766 (citing *Laxton*, 333 F.3d at 578).

[53] *See, e.g.., Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (citing *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp*., 749 F.3d 314, 319–20 (5th Cir. 2014))); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton*, 79 F. 4th at 494; *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also Nguyen v. Univ. of Tex. Sch. of Law*, 542 F. App'x 320, 323 (5th Cir. 2013).

### a.   Plaintiff Was Required to Maintain UAA for his Position

Plaintiff's offer letter makes clear that "obtaining and maintain authorization for unescorted access to the nuclear plant site" is required for the position.  ECF No. 28-2 at 43.  Although the qualification prong is generally not an issue where the employer has already hired the employee,[54] it is relevant when the position requires that certain qualifications or licenses be maintained.  In that case, the plaintiff must establish that he has not suffered some physical disability or loss of a necessary professional license or some other occurrence that renders him unfit for the position for which he was hired.[55]  When the plaintiff has lost or failed to obtain required certifications or licensures, he does not satisfy the "qualified for the position" element of the prima facie case.[56]

If an employee does not have the required objective qualifications for a position, he cannot establish a prima facie case for discriminatory action by his employer.[57]  Here, Plaintiff lost his UAA after a sleep study revealed that he had moderate obstructive sleep apnea and his doctor reported that he was unable to perform his job functions as a result of sleep apnea.  Uncontested Facts ¶¶ 60-61.  After his own doctor released him to return to work, Entergy's Medical Review

---

[54] *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 357 n.1 (5th Cir. 2009) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350–51 (5th Cir. 2007) ("Although Washington Mutual submitted evidence that Berquist's supervisors were not pleased with his performance, this evidence does not prove a lack of qualifications at the prima facie stage."); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) ("[A] plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.")).  *But see Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 956 F. Supp. 2d 722, 734 (E.D. La. 2013), aff'd, 562 F. App'x 209 (5th Cir. 2014) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988)) (holding that plaintiff was unqualified even after she was hired because she did not possess the necessary credentials for the position), *abrogated on other grounds as recognized by Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 829 n.15 (5th Cir. 2022).
[55] *Bienkowski.*, 851 F.2d at 1506 & n.3.
[56] *Murphy v. Univ. Health Shreveport, LLC*, No. 20-614, 2022 WL 277347, at *6 (W.D. La. Jan. 27, 2022) (granting summary judgment when plaintiff failed to establish she was qualified for the position due to lack of license in Louisiana); *Fullen v. Galveston Indep. Sch. Dist.*, 564 F. Supp. 2d 719, 730–31, 732–34 (S.D. Tex. 2008) (reasoning that the plaintiff could not establish a prima facie case of ADEA retaliation because "he was not objectively qualified to continue serving" in his position due to his failure to complete required training); *cf. Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) (per curiam) (unpublished) (determining that plaintiff had failed to state a claim for failure to promote under the ADEA because "by his own admissions he had not completed the on-the-job training necessary to become eligible" for the position he sought, thereby precluding a showing of qualification).
[57] *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citations omitted); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001) (same).

Officer did not clear the return because, under Entergy's standards based on Department of Transportation regulations, to regain his UAA, Plaintiff was required that he show that, for 70% of the month, he was using the CPAP machine for at least four hours per day, and his doctor's documentation did not demonstrate sufficient use.  *Id.* ¶¶ 62-64.

Chambliss admittedly failed to establish use of the CPAP machine for four hours per day during 70% of the month, and therefore, did not clear Entergy's Fitness for Duty requirements. ECF No. 28-7.  His inability to establish fitness for duty and obtain UAA renders him unqualified for the position.

   b. <u>Replacement or Disparate Treatment</u>

There is no summary judgment evidence indicating who replaced Plaintiff or the replacement's race.  Thus, Plaintiff has not established that he was replaced by someone outside of the protected class.

Plaintiff appears to argue that he was singled out by Patin when Patin and/or Askew required that he take certain tests.[58]  A plaintiff who offers disparate treatment and proffers "a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"[59]  Specifically, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[60]  While the plaintiff must show that a similarly situated comparator was treated more favorably in nearly identical circumstances, he need not prove that the circumstances

---

[58] ECF No. 28-2 at 18-26.

[59] *Lee*, 574 F.3d at 260 (citation omitted); *see also Santos v. Wincor Nixdorf, Inc.*, 778 F. App'x 300, 303 (5th Cir. 2019) (same).

[60] *Lee*, 574 F.3d at 260 (citations and footnotes omitted).

were identical to his own in every way.[61]

With regard to testing, Plaintiff appears to argue that he was treated differently than other employees because he was told he would be terminated if he failed, and another employee (Tremaine) failed a test without consequence.  The problem for Plaintiff, however, is that Tremaine is also African American.  ECF No. 28-2 at 25-26.  Being treated differently than another employee in the same protected class does not create an inference of discrimination.  An appropriate comparator requires Plaintiff to establish that a similarly situated employee not in his protected class was treated differently in nearly identical circumstances.  Plaintiff has not identified any other alleged comparator, and thus, has failed to satisfy that burden.

### 3.  Legitimate Business Reasons

If a plaintiff establishes all four elements of *McDonnell Douglas,* a presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination.[62]  Despite its argument that Plaintiff failed to establish a prima facie case, Entergy has articulated its legitimate business reason for termination: Plaintiff failed to regain his UAA status and thus was not qualified for the position.

If the employer proffers a legitimate non-discriminatory reason for its decision, the presumption of discrimination "simply drops out of the picture" and the burden returns to the plaintiff to prove that the defendant intentionally discriminated against him because of his protected characteristic.[63]  A plaintiff may carry that burden by establishing pretext, either through evidence of disparate treatment, by showing that the employer's proffered explanation is false or unworthy of credence,[64] i.e., that the employer's articulated reasons were not its true reasons, but

---

[61] *See id*. at 260–61 (citation omitted).
[62] *Harville v. City of Hous.*, 945 F.3d 870, 875 (5th Cir. 2019).
[63] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citations omitted).
[64] *Harville*, 945 F.3d at 879 (citation omitted).

are a pretext for discrimination,[65] or that a "motivating factor" was the plaintiff's protected characteristic."[66]

The anti-discrimination laws do not ask a court to sit as a super-personnel department that reexamines an entity's business decisions or the wisdom of those decisions, only to address whether those decisions are the result of discrimination.[67]  Thus the issue at the pretext stage is not whether the employer's reason was correct or fair, but whether the decisionmaker honestly believed the stated reason."[68]  Plaintiff must create an issue regarding whether "the employer honestly believes in the reasons it offers, not whether [the employer] made a bad decision."[69]  The court should not weigh the wisdom of particular employment decisions nor question every management decision and work assignment.  The single issue is whether the employer's decision was motivated by discrimination.[70]

A plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[71]  It is not enough, however, to *dis*believe the employer; the plaintiff's explanation of intentional discrimination must be believed as the ultimate issue is whether the defendant intentionally discriminated against the plaintiff.[72]  Thus, the plaintiff is not relieved of

---

[65] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir.2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).
[66] *Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 253–54 (5th Cir. 2020) (citing *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802)).
[67] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (citations omitted); *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4 (5th Cir. 1997).
(citing *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 912 n.7 (8th Cir. 1996)).
[68] *Harville*, 945 F.3d at 877 & n.24  (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); *Goudeau,* 793 F.3d at 476 (citation omitted).
[69] *Harris,* 1997 WL 255619 at *2 n.4; *7 (citations omitted).
[70] *See McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines v. Tex. Dep't of Prot. & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).
[71] *Reeves*, 530 U.S. at 148; *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (citation omitted); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511.
[72] *St. Mary's Honor Ctr.*, 509 U.S. at 519.

her burden to present evidence that will permit a rational factfinder to infer intentional discrimination.[73]  Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper.[74]

Termination of an employee who fails to maintain a required qualification (such as UAA) is a legitimate business reason for termination.  While Plaintiff disagrees with Entergy's Medical Review Officer's decision that he must demonstrate use of the CPAP for at least four hours a day for 70% of the month in order satisfy Entergy's fitness for duty requirements, the undisputed facts reflect that Entergy's Medical Review Officer reasonably believes this interpretation of Entergy's standards.  ECF No. 28-7 at 3-4, 6-7.  To overcome Entergy's legitimate business reason for termination, Plaintiff must do more than argue that Entergy was wrong.  He must present "substantial evidence" that its legitimate, nondiscriminatory reason for termination is pretextual.[75]

Pretext is established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[76]  Plaintiff has not identified any Caucasian employee who failed to maintain UAA status as required by their job description but was not terminated.  Further, while Plaintiff has alleged that Patin discriminated against him, Patin was not the medical review officer who did not clear Plaintiff's return.  Plaintiff

---

[73] *Harville*, 945 F.3d at 877 & n.26 (citing *Reeves*, 530 U.S. at 153 (noting that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination" and reminding that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal quotation marks and alterations omitted)).

[74] *Id*. at 876–77 (citations omitted).

[75] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (citation omitted).

[76] *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace*, 271 F.3d at 220).

has not even suggested that anyone in Site Access or the medical review officer held any discriminatory animus.

### D. **Hostile Environment**

In addition to protecting employees from race discrimination in the workplace, both § 1981 and Title VII also make it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."[77]  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[78]

A hostile work environment claim requires the plaintiff to establish that (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."[79]  For harassment to affect a term, condition, or privilege of employment, it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[80]  In other words, the workplace is permeated with discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's employment and creates an abusive work environment.[81]

The environment must be both objectively and subjectively offensive (i.e., one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be

---

[77] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432–33 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))), *cert. denied*, 143 S.Ct. 745 (2023).

[78] *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1))).

[79] *West v. City of Hous.*, 960 F.3d 736, 741–42 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *see also Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001) (citing *Shepherd v. Comptroller of Pub. Accts. of the State of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999)).

[80] *West*, 960 F.3d at 741–42 (citation omitted).

[81] *Harris*, 510 U.S. at 21.

so).[82]   The totality of the employment circumstances determines whether an environment is objectively hostile.[83]   Although no single factor is determinative, pertinent considerations are: (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."[84]   To that end, federal discrimination laws are not a general civility code prohibiting all types of harassment in the workplace.[85]   "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[86]

Entergy argues that the single use of the term "boy" is insufficient to establish a hostile environment claim.   ECF No. 28-1 at 14.   Although the Fifth Circuit has recognized that even the single use of a racial epithet may support a hostile work environment claim when that incident is sufficiently severe under the totality of the circumstances test,[87] the term "boy" is not an unambiguous racial epithet as is the N-word.[88]   Further, while Plaintiff alleges that Patin referred to him as "boy," he does not mention that allegation in his Opposition Memorandum, does he provide any context for the alleged statement, and he does not connect it in any way to the termination decision.   The Court's independent review of the evidence indicates that Plaintiff alleges Patin called him "boy" after Plaintiff thought he hit something while driving the forklift

---

[82] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21–22)); *Aryain v. Wal–Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Faragher*, 524 U.S. at 786).

[83] *Harris*, 510 U.S. at 23.

[84] *Id.; EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citation omitted).

[85] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998).

[86] *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted).

[87] *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (holding single use sufficient where direct supervisor referred to plaintiff as "lazy monkey a—n-----" in front of fellow employees).

[88] *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (noting that the word "boy" may not always be benign depending on "context, inflection, tone of voice, local custom, and historical usage); *see also, e.g., Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009) (three comments, including two involving the use of the word "boy," did not "rise to the level of severity or pervasiveness required to show a hostile work environment"); *Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373 (5th Cir. 2020) (noting that, though disturbing, two instances of racial graffiti and being called "boy" are insufficient to establish a hostile work environment under Fifth Circuit precedent).

after which Plaintiff called Patin to come and see whether he hit anything.[89]  Plaintiff submits no summary judgment evidence, however, to establish any additional context of this alleged statement or whether any other co-workers were present for this alleged comment.

Title VII does not protect employees from difficult or demanding managers, nor does it protect them from harsh language by a supervisor.  Rather, Title VII protects an employee from a hostile work environment based on the employee's membership in a protected class.  Harassment based on a protected trait "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[90]  In other words, the workplace must be so permeated with discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's employment and creates an abusive work environment.[91]  And the harassment environment must be both objectively and subjectively offensive.

While Plaintiff may have subjectively felt the term reflected discriminatory animus, it is not an objectively race-based statement.  Considering the totality of the circumstances, the single use of the term "boy," which is an ambiguous term that may be derogatory in certain contexts and race-neutral in others, is insufficient to establish a race-based, objectively severe or pervasive hostile environment as necessary to support a harassment claim.

### E.  Retaliation

Retaliation claims arising under Title VII and § 1981 are governed by the same "legal framework."[92]  An employee bringing a retaliation claim must first produce evidence of a prima facie case of retaliation:  (1) the employee engaged in an activity that Title VII protects; (2) the employee was subjected to an adverse employment action; and (3) a causal connection exists

---

[89] *See* ECF No. 28-2 at 42 (lines 17-25 from deposition excerpt submitted by Entergy).

[90] *West*, 960 F.3d at 741–42 (citation omitted).

[91] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (cleaned up).

[92] *Melancon v. Lafayette Gen. Med. Ctr., Inc.*, No. 22-30704, 2023 WL 6621679, at *2 (5th Cir. Oct. 11, 2023) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007))).

between the protected activity and the adverse employment action.[93]   The Fifth Circuit has also

described the elements of a prima facie case as requiring the plaintiff to show: (1) that he engaged

in protected activity; (2) that the employer knew about the protected activity; and (3) the employer

retaliated against him because of the protected activity.[94]   Once an employee establishes a prima

facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its

decision."[95]   After the employee provides that benign reason, "the burden shifts back to the

employee to demonstrate that the employer's reason is actually a pretext for retaliation."[96]

    An employee has engaged in activity protected by Title VII if he has either (1) opposed a

practice made unlawful by Title VII or (2) made a charge, testified, assisted or participated in any

manner in an investigation, proceeding or hearing under Title VII.[97]   "[T]he opposition clause does

not require opposition alone; it requires opposition of a practice made unlawful by Title VII."[98]

Thus, an employee "cannot simply complain that he received unfair or undesirable treatment."[99]

Under Fifth Circuit precedent, a vague complaint, without reference to an unlawful employment

practice under Title VII, does not constitute protected activity.[100]   The employee must refer to

---

[93] *Abbt v. City of Hous.*, 28 F.4th 601, 610 (5th Cir. 2022) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)); *Johnson*, 7 F.4th at 407–08 (citation omitted).   For purposes of retaliation claims, "adverse employment actions" are not limited to employer actions and harm that impact employment and the condition of the workplace because Title VII's antiretaliation provision seeks to secure a nondiscriminatory workplace "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [Title VII's] basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

[94] *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (citing *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017); *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016)).

[95] *Id.* (citing *Solvay Pharms.*, 871 F.3d at 332 (citation omitted)).

[96] *Id.*

[97] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)); *see also Douglas v. DynMcDermott Petrol. Ops. Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)).

[98] *E.E.O.C. v. Rite Way Serv.,* Inc., 819 F.3d 235, 240 (5th Cir. 2016) (citation omitted).

[99] *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013) (citing *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007)).

[100] *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (citations omitted); *Tratree*, 277 F. App'x at 396 ("Complaining about unfair treatment without specifying why the treatment is unfair, however, is not a protected activity"); *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (finding that employee did not engage in protected activity when she complained of harassment but did not mention race or sex).

conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its alleged discriminatory practice.[101]

A retaliation claim requires only that a plaintiff to establish a "materially adverse" action, i.e., an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[102]  This requirement of materiality is necessary to separate "significant from trivial harms."[103]  It does not encompass "'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace."[104]  To determine whether an action is "materially adverse," courts consider whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among . . . co-workers."[105]  The focus is on the objective qualities of the positions, rather than the employee's subjective preference for one position over another.[106]  Thus, the action must be objectively adverse: "A plaintiff's subjective perception that a demotion has occurred is not enough."[107]  Simply being chastised by a superior[108] or subjected to heightened scrutiny[109] is generally not materially adverse and thus insufficient to establish retaliation.

---

[101] *Allen v. Envirogreen Landscape Profs., Inc.,* 721 F. App'x 322, 326–27 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007)).

[102] *Burlington,* 548 U.S. at 57; *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *White*, 548 U.S. at 57); *see also Sharp v. City of Hous.*, 164 F.3d 923, 933 (5th Cir. 1999).

[103] *Aryain,* 534 F.3d at 484 (5th Cir. 2008) (quoting *White*, 548 U.S. at 68); *Keenan v. Tejeda*, 290 F.3d 252, 258 n.4, n.5 (5th Cir. 2002) (citations omitted); *see also Marchman v. Crawford*, 726 F. App'x 978, 985 (5th Cir. 2018).

[104] *Aryain*, 534 F.3d at 485 (quoting *White*, 548 U.S. at 68).

[105] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (citation omitted).

[106] *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 n.8 (5th Cir. 2001), *abrogated on other grounds by Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702 (5th Cir. 2016)).

[107] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) (quotation omitted), *abrogated on other grounds by Hamilton*, 79 F.4th at 494.

[108] *Credeur v. La. through Off. of Att'y Gen.*, 860 F.3d 785, 798 (5th Cir. 2017) (citing *Stewart*, 586 F.3d at 332 (internal quotation omitted)).

[109] *Magiera v. City of Dallas*, 389 F. App'x 433, 437–38 (5th Cir. 2010); *see also King v. Louisiana*, 294 F. App'x 77, 84-85 (5th Cir. 2008) (citing *White*, 548 U.S. at 68; *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)) (holding rudeness and unfriendliness by a supervisor and a co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute actionable adverse employment actions"); *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (citing *White*, 548 U.S. at 68) (finding disciplinary write-ups and micro-managing of plaintiff's performance not materially adverse); *Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404, 407 (5th Cir. 2007) (holding unjustified reprimands are "trivial" and not materially adverse; supervisor's increased scrutiny would not dissuade reasonable employee from reporting discrimination).

Ultimately, retaliation must be proved according to traditional principles of but-for causation.[110]  At the prima facie stage, however, the "causal connection" between the protected activity and materially adverse action may be established by showing close enough timing between the two events.[111]  But adverse action that occurs before a "protected activity" cannot form the basis of a retaliation claim.[112]  The causation prong necessarily requires proof that the employer actually knew about the employee's protected activity.[113]  If the employer is unaware of an employee's protected conduct at the time of the materially adverse action, then such action plainly cannot be in retaliation for that protected conduct.[114]

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision.  After the employer provides its legitimate, non-retaliatory reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext.  Under *Nassar,*[115] a stronger causal connection must be established at the pretext stage.[116]  Specifically, the plaintiff must establish that, "but for" the protected activity, the adverse action would not have occurred.[117]

---

[110] *Willis v. Napolitano*, 986 F. Supp. 2d 738, 748 (M.D. La. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358–360 (2013)), *aff'd sub nom. Willis v. U.S.*, 576 F. App'x 340 (5th Cir. 2014).

[111] *Garcia,* 938 F.3d at 241 (citing *Feist v. La., Dep't of Just., Off. of Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020) ("The protected act and the adverse employment action must be very close in time to establish causation by timing alone.") (quotation marks, citation, & alterations omitted)).

[112] *Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 462 (5th Cir. 2008).

[113] *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 360 (5th Cir. 2017) (rejecting "general corporate knowledge" argument and requiring proof of actual knowledge by the decisionmaker) (citation omitted).

[114] *Id.* (quoting *Chaney v. New Orleans Pub. Facility Mgmt., Inc*., 179 F.3d 164, 168 (5th Cir. 1999)).

[115] *See Nassar*, 570 U.S. at 360.

[116] The functional difference between the causation inquiries in the prima facie and pretext analyses is not the type of evidence used, but rather, that the burden at the pretext stage is more stringent.  *Medina,* F.3d at 685 (citation omitted).

[117] *Garcia*, 938 F.3d at 243 (5th Cir. 2019) (holding *Nassar*'s heightened but-for causation requirement applies only at the pretext stage); *see also Williams v. B R F H H Shreveport, L.L.C.*, 801 F. App'x 921, 925 (5th Cir. 2020) (same); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that the more stringent "but for" standard applies to the pretext issue after the employer had identified its legitimate business reason).

### 1. The Protected Activity

Neither the specific "protected activity" nor the dates of same are identified in Plaintiff's Complaint, Amended Complaint, or Opposition Memorandum.  *See* ECF No. 1; No. 17; No. 41.[118] The Court's independent review of the record suggests three potential retaliatory acts: (1) requiring that he take and pass certain tests; (2) issuance of the Last Chance Agreement; and (3) termination for failure to regain his UAA.  ECF No. 28-6 at 3.  Assuming each of these events qualify as adverse action for purposes of retaliation, Plaintiff has not satisfied the causal element.

Plaintiff does not identify any alleged protected activity shortly after he was hired and before he was required to take and pass certain tests.  Conduct that pre-dates protected activity cannot constitute retaliation.[119]  With regard to the Last Chance Agreement and termination, while timing alone may satisfy the causal element in certain cases (e.g., February 8th complaint and February 23rd discipline), Plaintiff must also establish that the alleged retaliator had knowledge of the protected activity.[120]  Plaintiff produces no evidence that anyone, including the alleged discriminator Patin, the medical review officer, or any employees in the Site Access Department had knowledge of his February 8th ethics line complaint.

### 2. Entergy's Articulated Legitimate, Non-Retaliatory Reason for Termination

Had Plaintiff satisfied his burden to establish a prima facie case of retaliation, Entergy has identified his misconduct (as reported by several employees including one who made an ethics line complaint) as the basis for the Last Chance Written Warning and his failure to establish fitness for duty to regain his UAA status as its legitimate, non-retaliatory reason for termination.  While

---

[118] Plaintiff's Complaint (ECF No. 1 ¶ 31) and Amended Complaint (ECF No. 17 ¶ 31) inexplicably assert that the alleged retaliation occurred solely because Plaintiff reported "sex discrimination."  This case does not involve allegations of sex discrimination.

[119] *Watkins*, 269 F. App'x at 461 (holding that actions cannot be retaliatory if they predate the protected activity).

[120] *Robinson,* 714 F. App'x at, 360 (rejecting "general corporate knowledge" argument and requiring proof of actual knowledge by the decisionmaker) (citation omitted).

Plaintiff disputes the numerous other employees' account of his conduct on February 8th and he disagrees with Entergy's assessment that he must wear his CPAP machine for at least four hours for 70% of the month to establish fitness for duty, those disagreements are insufficient to defeat a properly supported summary judgment because the issue is not whether the other employees' accounts are accurate or whether Entergy's decision was correct; rather, the issue is whether Entergy had a good faith basis to believe those employees' reports and its medical review officer's interpretation of its policy.  Given the evidence adduced in support of summary judgment and Plaintiff's failure to provide any evidence to establish that Entergy's stated reasons for its decisions were not its true reasons, that same are unworthy of credence, or that Entergy does not in good faith believe those reasons, Plaintiff retaliation claims fail.

Having articulated its legitimate, non-retaliatory reason for the discipline and termination, the burden shifts back to Plaintiff to establish that "but for" his protected activity (i.e., complaints), he would not have been disciplined or terminated.[121]  Plaintiff simply has not established that, "but for" his protected activity, he would not have been disciplined or terminated.  In short, no rational factfinder could conclude that, "but for" Plaintiff's protected activity, he would not have been disciplined or terminated in the face of the numerous employee reports of his misconduct and his failure to establish fitness for duty to regain his UAA status.

## IV.    <u>CONCLUSION</u>

Plaintiff has offered absolutely no evidence to defeat Defendant's summary judgment as to his claims for race discrimination, harassment, and retaliation.  For the foregoing reasons, Plaintiff's Title VII claims must be dismissed as untimely.  Even if his Title VII claims were not untimely, he does not provide sufficient evidence to create a material issue of fact as to whether

---

[121] *Nassar*, 133 S. Ct. at 2526.

he was discriminated against based on his race or subjected to a hostile work environment. Likewise, he has no evidence to establish retaliatory discharge or that, "but for" his protected activity, Entergy would not have disciplined him or terminated his employment based on his failure to regain is UAA status.  While Plaintiff no doubt subjectively believes that Entergy's decision was based on his race or protected activity, that subjective belief, no matter how genuine, is insufficient to defeat summary judgment.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion for Summary Judgment (ECF No. 28) is GRANTED.

New Orleans, Louisiana, this 27th day of October, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE